NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIRGINIA SURETY COMPANY, INC. | Hon. Garrett E. Brown, Jr. |
| Plaintiff, | |
| | Civil Action No. 08-5586 (GEB) |
| v. | |
| JACK MACEDO, SANDRA MACEDO-BILYNSKY, CARLOS PEIXOTO, MACEDOS CONSTRUCTION CO., INC. OF NEW JERSEY, C.C.S. SERVICES OF EAST HANOVER, INC., JOSE MOREIRA, and JANE DOES 1-3, | **MEMORANDUM OPINION** |
| Defendants. | |

**BROWN, Chief Judge:**

This matter comes before the Court on the motion to dismiss (Doc. No. 51) filed by Defendants Jack Macedo, Sandra Macedo-Bilynsky, Macedos Construction Co. Inc., of New Jersey, and C.C.S. Services of East Hanover, Inc. and joined by Defendant Carlos Peixoto (collectively "Macedos Defendants"), and the motion to dismiss (Doc. No. 52) filed by Defendant Jose Moreira. For the following reasons, both motions to dismiss will be denied without prejudice, and Plaintiff Virginia Surety Company, Inc. ("VSC") shall be ordered to file a RICO Case Statement pursuant to Local Civil Rule 16.1(b)(4) and Appendix O.

*Background*

I.  **General Background and Procedural History**

This insurance fraud action arises from a construction accident and the resulting disputes over liability and insurance coverage between Plaintiff Virginia Surety Company, Inc. ("VSC")

and Defendants Macedos Construction Company Inc. of New Jersey ("MCC"), various individuals associated with MCC, and the injured party, Jose Moreira. VSC issued a workers' compensation policy and a commercial general liability ("CGL") policy to Defendant Macedos Construction Company Inc. of New Jersey ("MCC") covering the date of the accident in question. According to Plaintiffs, in its applications for the policies, MCC represented that it engaged exclusively in commercial construction projects. (Am. Compl. ¶¶ 20-24.) Defendant C.C.S. Services of East Hanover, Inc. ("CCS") was effectively a subsidiary of MCC owned in whole or part by members of the Macedo family. (*Id.* ¶ 10.)

      Defendant Carlos Peixoto was employed by MCC as a foreman. Peixoto and his wife owned property located in Tewksbury, New Jersey (the "Property"), and were building a family residence on the Property. The construction permits issued by Tewksbury Township listed Peixoto as the "Contractor" for the home construction project at the Property, and did not list MCC as a contractor. (Am. Compl. ¶¶ 29-41.) According to VSC, in September 2005, Peixoto asked two MCC employees if they could recommend any carpenters for the building of the home. (*Id.* ¶ 49.) These employees referred Peixoto to Manuel Covas (*id.* ¶ 50), and Peixoto hired Covas and his co-worker Moreira to provide carpentry services for the project (*id.* ¶ 54). Plaintiffs allege that Moreira and Covas were employed by D. Reis Contracting and its owner Dominick Reis. (*Id.* ¶¶ 42-47.) On October 1, 2005, while working at the Property, Moreira climbed onto a raised scaffold approximately 25 feet above the ground, and the scaffolding collapsed, causing Moreira to fall to the ground and suffer injuries requiring hospitalization. (*Id.*

¶¶ 63-66.)[1]

Based on MCC's filing of workers' compensation and CGL claims under the VSC policies with the representation that Moreira was its employee, and subsequent actions taken and filings made by MCC and other Defendants in pursuing these claims and litigating a state-court tort action filed by Moreira, VSC filed the instant action in November 2008. VSC asserted claims under the federal Racketeering Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962(c), (d), and various fraud-based state-law claims, against the Macedos Defendants (Macedo, Macedo-Bilynsky, MCC, CCS, and Peixoto), Moreira, and Moreira's wife Rosa Gomes. VSC also sought declaratory relief voiding and rescinding coverage for Moreira claims. All Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In an Order issued September 29, 2009 and Opinion issued September 30, 2009, then District and now Circuit Judge Joseph A. Greenaway, Jr. granted Defendants' motion to dismiss without prejudice.[2] *Va. Surety Co. v. Macedo*, No. 08-5586, 2009 WL 3230909 (D.N.J. Sept. 30, 2009). Judge Greenaway primarily concluded that VSC failed to plead its RICO and state-law fraud causes of action with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b). *Id.* at *7-8, *10-12. In December 2009, VSC filed an Amended Complaint. While its initial complaint contained RICO claims against Macedo, Macedo-Bilynsky, and Peixoto, VSC's Amended Complaint only includes RICO claims against Macedo-Bilynsky. VSC claims that MCC and CCS collectively formed an enterprise for purposes of RICO. VSC also asserts claims

---

[1]Moreira asserts that he suffered significant injuries, including a burst fracture of the spinal column, and has been unable to work for over four years. (Moreira Br. at 3.)

[2]By order of April 14, 2010, this matter was reassigned to the undersigned.

of statutory insurance fraud, statutory workers' compensation fraud, common law fraud, fraud-based unjust enrichment, and conspiracy to defraud against all Defendants.  Finally, VSC seeks various forms of declaratory relief rescinding and voiding coverage for Moreira.  VSC no longer asserts any claims against Moreira's wife, Rosa Gomes.

MCC, CCS, Jack Macedo, and Sandra Macedo-Bilynsky, have filed a Rule 12(b)(6) motion to dismiss the Amended Complaint (Doc. No. 51), and Peixoto joined this motion (Doc. No. 52).  Moreira filed a separate Rule 12(b)(6) motion (Doc. No. 53).  Based upon VSC's federal RICO claim, this Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.  This Court may exercise supplemental jurisdiction over VSC's state-law claims pursuant to 28 U.S.C. § 1367.

## II.  VSC's Asserted Instances of Insurance Fraud

VSC bases its 32 causes of action on various asserted instances of insurance fraud accomplished through use of the mail and wire.  VSC alleges that in the immediate aftermath of Moreira's injury, on or shortly after October 1, 2005, Peixoto notified Moreira that MCC would list Moreira as an MCC employee such that MCC, through VSC's coverage, would pay for his injuries.  (Am. Compl. ¶ 67.)  On October 5, 2005, Macedo-Bilynsky submitted a workers' compensation claim to MCC's insurance broker under MCC's policy with VSC for Moreira's injury.  In this form, Macedo-Bilynsky allegedly falsely listed and described Moreira as an employee of MCC.  (*Id.* ¶¶ 71-77.)  Macedo-Bilynsky filed a claim on October 10, 2005 with MCC's insurance broker for coverage under the CGL policy in which she described Moreira as an employee of MCC.  (*Id.* ¶ 84.)  VSC claims that MCC made these allegedly fraudulent filings to secure workers' compensation insurance coverage and benefits for Moreira, and to immunize

4

MCC from potential liability in any suit brought by Moreira against MCC and/or Peixoto. (*Id.* ¶¶ 70, 86.)

On October 14, 2005, Moreira signed and submitted a workers' compensation claim questionnaire to VSC's claims administrator in which he allegedly falsely listed MCC as his employer. (Am. Compl. ¶¶ 88-90.) On October 24, 2006, Moreira filed an employee's claim petition with the New Jersey Department of Labor, Division of Workers' Compensation. Through counsel, Moreira allegedly listed MCC falsely as the respondent employer. (*Id.* ¶¶ 95-96.) VSC asserts that it relied on this filing and has paid over $250,000 to or for the benefit of Moreira and to the unjust enrichment of the Macedos Defendants. (*Id.* ¶ 103.)

During the investigation of the Moreira claims, VSC's claims administrator requested the construction contract or agreement between MCC and Peixoto for work performed at the Property, as well as a 2005 W-2 form for Moreira. On January 24, 2007, Macedo-Bilynsky provided the claims administrator on behalf of MCC a purported MCC-Peixoto agreement that MCC was the contractor for Peixoto's residential project, and also submitted a purported Moreira W-2 statement identifying Moreira as an employee of CCS. VSC asserts that both were fabricated to support MCC's and Moreira's insurance claims. (*Id.* ¶¶ 106-117.)

On July 30, 2007, Moreira and his wife Rosa Gomes filed a personal injury action against Peixoto, his wife, MCC, and others in the Superior Court of New Jersey, Law Division, Hunterdon County ("State Court Action"). Peixoto and MCC moved for summary judgment in the state court action in March 2008, arguing that the action was barred due to the exclusive remedy provided under New Jersey's workers' compensation laws. (*Id.* ¶ 125.) In connection with this motion, Macedo-Bilynsky executed a Certification in which she allegedly falsely

5

certified under penalty of perjury that at the time of Moreira's accident, he was a non-union employee of MCC. According to the Certification, all non-union employees were paid through CCS, a subsidiary of MCC. (*Id.* ¶¶ 126-27.)

VSC further claims that Jack Macedo, in a meeting with Moreira and Reis, allegedly attempted to influence to convince Moreira to continue pursuing his workers' compensation claim and discontinue his State Court Action, telling Moreira that "it would be better for him if he simply stayed with workers compensation." (*Id.* ¶¶ 145-47.) Finally, VSC asserts that Moreira subsequently revealed under oath in the State Court Action that, according to VSC, he "conspired" with MCC "to fabricate and misrepresent an employment relationship" with MCC to obtain workers compensation benefits and payment of medical expenses to which he was not entitled from VSC. (*Id.* ¶ 150.) In his opposition to MCC's and Peixoto's motion for summary judgment in the State Court Action, Moreira filed a Certification dated March 13, 2008, stating, among other things, that: until his accident, he did not understand that he was employed by MCC, and MCC did not exert any authority over the construction project at the Property; he never received any paycheck or W-2 form from MCC; he learned in the hospital that he would be considered an employee of MCC and would be covered by MCC workers' compensation benefits; counsel told him that MCC provided a W-2 for him from CCS, an entity with which he was unfamiliar and for whom he was never employed. (*Id.* ¶ 153.) Moreira subsequently did not oppose MCC's notice of motion to dismiss Moreira's workers' compensation petition with the Department of Labor for lack of employment. He conceded that MCC was entitled to dismiss the workers' compensation petition. (Am. Compl. ¶¶ 156-57.) VSC defended MCC in the State Court Action until December 16, 2008, when VSC's investigation revealed the alleged multiple

6

acts of insurance fraud committed by Defendants. (*Id.* ¶ 130.) VSC claims that it has spent at least $31,891.97 in defending MCC in the State Court Action. (*Id.* ¶ 159.)

Moreira's State Court Action remains pending. On May 20, 2009, approximately six months after VSC filed its first Complaint in this District, MCC and Peixoto filed third-party complaints against VSC and its claims administrator in the State Court Action for breach of contract and other claims based on VSC's ultimate decision to deny defense and indemnification coverage to MCC and Peixoto after the alleged fraud was revealed. (Macedos Defs.' Br. at 27; Haefner Certif., Ex. D.) VSC has filed counterclaims allegedly asserting similar fraud claims to those raised in the action before this Court. (Doc. No. 59.) The Superior Court in the State Court Action ordered on March 12, 2010, "the issue of plaintiff['s] status as an employee shall be tried to a jury," and the issues of coverage and fraud raised in the third-party complaint and counterclaims shall be tried separately. (VSC Letter Dated Mar. 30, 2010 (Doc. No. 62).) To this Court's knowledge, no final decision has been rendered in the State Court Action on any of the issues raised in that action.

*Analysis*

I.      **Rule 12(b)(6) and Rule 9(b)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

VSC asserts a federal RICO claim premised on mail and wire fraud, and many of its other state-law claims sound in fraud. Therefore, its allegations of fraud with regard to RICO and its state-law fraud claims must be pled with particularity pursuant to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (applying Rule 9(b) to federal RICO claims based on mail and wire fraud); *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983) (applying Rule 9(b) to state-law fraud claims). To satisfy Rule 9(b), the plaintiff must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum*, 361 F.3d at 223-24 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "[T]he plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.

8

2007) (citing *Lum*, 361 F.3d at 223-24).

## II. VSC's RICO Claims Against Macedo-Bilynsky

Although styled as a single cause of action in its Complaint, VSC asserts three claims for violation of RICO against Macedo Bilynsky. RICO prohibits certain racketeering activities established under 18 U.S.C. § 1962, and the statute authorizes a civil action for "[a]ny person injured in his business or property by reason of section 1962." 18 U.S.C. § 1964(c). VSC alleges violations of § 1962(b),(c), and (d). Section 1962(c), the primary violation upon which the parties focus most of their attention, prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Finally, § 1962(d) prohibits any person from conspiring to violate any of the subsections of § 1962.

While the primary congressional purpose in enacting RICO was "to seek the eradication of organized crime in the United States," Pub. L. No. 91-452, 84 Stat. 922, 922-23 (1970), Congress mandated that RICO "be liberally construed to effectuate its remedial purposes," *id.* at 942. Therefore, the Supreme Court has generally held that RICO must be liberally applied, and that it reaches legitimate businesses and enterprises, operating with and without a profit motive. *See, e.g.*, *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985). However, while the Supreme

Court has reaffirmed the liberal construction of RICO, it has cautioned that such a reading is "not an invitation to apply RICO to new purposes that Congress never intended." *See Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). "Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Manhattan Telecomm. Corp. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001) (quotations and citations omitted). "[C]ourts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Id.* (quoting *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998)).

To allege a RICO claim pursuant to § 1962(c), a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, [plus (5) an] injury to property or business." *Lum*, 361 F.3d at 223 (citing *Sedima*, 473 U.S. at 496). The term "racketeering activity" refers to the list of enumerated federal and state crimes provided in § 1961(1) of the RICO statute and includes, *inter alia*, mail fraud and wire fraud. *See* 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1346 (scheme or artifice to defraud). As discussed above, where a RICO plaintiff relies upon mail and wire fraud as the predicate acts of racketeering, the fraud allegations must be pled with particularity in accordance with Rule 9(b). While the heightened pleading standard of Rule 9(b) does not appear to apply to RICO elements other than a fraudulent predicate offense, those elements must still meet the general requirements of Federal Rule of Civil Procedure 8 as applied in *Twombly*. *In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184/05-

10

1079, 2007 WL 2892700, at * 8 (D.N.J. Sept. 28, 2007) (collecting cases).[3]

### III.  Defendants' RICO Arguments

The Macedos Defendants contend VSC's RICO claims against Macedo-Bilynsky must be dismissed for many reasons. They primarily argue that VSC has not pled actionable predicate racketeering acts of mail or wire fraud because many of VSC's asserted instances of insurance fraud involve, in whole or in part, a representation that Moreira was an employee of MCC at the time of his accident. In resolving the first motion to dismiss, Judge Greenaway commented that under New Jersey law, whether an individual is an employee or not is a mixed question of law and fact, and misrepresentations of law such as those alleged by VSC are not actionable as fraud because statements of law are mere opinions. *Va. Surety*, 2009 WL 3230909, at *8 (citing *Sloan v. Luyando*, 305 N.J. Super. 140, 146 (App. Div. 1997) and *Sosa v. DIRECTTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006)). All Defendants argue that the law of the case doctrine applies here to bar all of VSC's claims, including its RICO claims and its state-law claims, because the acts of fraud alleged by VSC all derive from false statements regarding Moreira's employment status.

The Macedos Defendants also contend with regard to the RICO claims that many of VSC's asserted instances of fraud are barred by New Jersey's litigation privilege and/or the federal *Noerr-Pennington* doctrine. The Macedos Defendants further argue that VSC lacks

---

[3] Still, where "a plaintiff's claims as to any element other than the predicate offense interrelates with a fraudulent conduct that the plaintiff asserts to be the predicate offense – e.g., if the 'how' aspect of the fraud is based on defendant's use of an enterprise structure – it would indeed be anomalous for the plaintiff not to plead the structure aspect of the enterprise element with particularity while setting forth plaintiff's claims as to the enterprise but to plead the very same structure aspect with particularity while setting forth plaintiff's claims as to the predicate offense." *In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184/05-1079, 2007 WL 1062980, at *6 n.4 (D.N.J. Apr. 5, 2007); *see also In re Ins. Brokerage*, 2007 WL 2892700, at * 8 n.6.

standing under RICO because there has been no finding in the State Court Action regarding Moreira's employment status, and, therefore, VSC cannot yet sufficiently allege that it has suffered injury to its business in the form of a concrete, non-speculative financial loss. *See* 18 U.S.C. § 1964(c); *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). Finally, the Macedos Defendants argue that VSC has not alleged sufficiently that Macedo-Bilynsky, the only RICO Defendant, participated in the conduct of the affairs of the enterprise under the "operation and management" test. *See Reves*, 507 U.S. at 184-85.

## IV. RICO Case Statement

After being granted leave to amend by Judge Greenaway, VSC transformed their vague 21-page complaint into a 95-page, 382-paragraph Amended Complaint. While it appears that VSC substantially increased the specificity of some of its allegations with regard to RICO and its state-law claims, this Court cannot determine at this time whether the Amended Complaint contains sufficient pleadings as to certain key elements. With regard to the requirement under RICO that the defendant participated in the operation and management of the enterprise, "RICO liability may extend to those who do not hold a managerial position within an enterprise," but a plaintiff must still sufficiently allege that the defendant "knowingly further[ed] the illegal aims of the enterprise by carrying out the directives of those in control." *See United States v. Parise*, 159 F.3d 790, 796 (3d Cir. 1998); *see also Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (requiring that RICO person "knowingly engage in 'directing the enterprise's affairs' through a pattern of racketeering activity." (quoting *Reves*, 507 U.S. at 179)). Rule 9(b) dictates that conditions of mind such as knowledge may be alleged generally, but a plaintiff's allegations of knowledge "must satisfy the general pleading standards set forth

in Rule 8(a) as interpreted in *Twombly* and *Iqbal*." *New Hope Pipe Liners, LLC v. Composites One, LLC*, No. 09-3222, 2009 WL 4282644, at *6 (D.N.J. Nov. 30, 2009); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("While state of mind may be averred generally, plaintiffs must still allege facts that show the court their basis for inferring that the defendants acted with 'scienter.'"). The allegations must be sufficient to state a claim that is plausible on its face in that the alleged factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

VSC has alleged that Macedo-Bilynsky "conducted the affairs of the Enterprise" (Am. Compl. ¶ 15) by knowingly submitting the initial, allegedly fraudulent notices of claim to VSC, providing the allegedly fraudulent MCC-Peixoto agreement and Moreira W-2 form to VSC and its claims administrator, and filing an allegedly fraudulent certification in the State Court Action. However, beyond conclusorily alleging that Macedo-Bilynsky made these representations "purposely or knowingly," it is unclear whether it has pled sufficient facts from which it could be reasonably inferred that Macedo-Bilynsky knowingly furthered the allegedly illegal aims of the enterprise. It is difficult to determine whether VSC's circumstantial allegations of fact regarding the knowledge of some Defendants extend to Macedo-Bilynsky's knowledge.

Specificity is imperative in this matter, both because VSC's fraud allegations implicate the heightened pleading standard of Rule 9(b) and RICO statute itself requires specificity, particularly in light of the heavy penalties imposed upon an unsuccessful RICO defendant. *See Darrick Enters. v. Mitsubishi Motors Corp.*, No. 05-4359, 2007 WL 6813810, at *3 (D.N.J. Jan.

13

19, 2007).  Therefore, this Court will deny the motions to dismiss without prejudice and exercise its authority pursuant to Local Civil Rule 16.1(b)(4) to require that VSC file a RICO Case Statement in the form set forth in Appendix O to the Local Civil Rules.  This statement "is equivalent to a supplemental pleading which shall include the facts the plaintiff is relying upon to initiate this RICO complaint as a result of the 'reasonable inquiry' standard required by Fed. R. Civ. P. 11."  L. Civ. R., App. O.  The RICO Case Statement is "designed to aid plaintiffs in framing their claims with particularity sufficient for the requirements of the RICO statute." *Northland Ins. Co. v. Shell Oil Co.*, 930 F. Supp. 1069, 1073 (D.N.J. 1996).  While the RICO Case Statement does not directly apply to VSC's state-law statutory and common law fraud claims, the filing of this statement "will also serve to clarify those claims as well because Defendants' alleged misconduct is the basis for" these claims.  *Darrick*, 2007 WL 6813810, at *3.  Paragraph 13 of this District's RICO Case Statement specifically addresses the "operation or management" element of VSC's RICO claims discussed above.

Other paragraphs of the RICO Case Statement will also assist the Court in addressing the other arguments raised by the Macedos Defendants and Moreira.  This Court makes no conclusions at this time on the parties' other arguments, including whether the alleged misrepresentations regarding Moreira's employment status are actionable fraud or the potential applicability of a litigation privilege or the *Noerr-Pennington* doctrine, and whether VSC has sufficiently pled a cognizable RICO injury.

To ensure that these issues are resolved in a timely manner and to avoid any need for the filing of redundant motion papers on some issues, this Court will set a schedule for submission of the RICO Case Statement and renewed motion briefing.  VSC shall submit its RICO Case

Statement no later than September 27, 2010.  Defendants may renew their motions to dismiss no later than October 27, 2010, and they need only supplement their prior moving papers as to those matters materially affected by the RICO Case Statement.[4]  VSC's opposition to Defendants' renewed motions must be filed no later than November 16, 2010.  Defendants' reply shall be due no later than November 23, 2010.

*Conclusion*

For the foregoing reasons, the Macedos Defendants' motion to dismiss (Doc. No 51) and Moreira's motion to dismiss (Doc. No. 52) will be denied without prejudice.  This Court will order VSC to file a RICO Case Statement pursuant to Local Civil Rule 16.1(b)(4) and Appendix O no later than September 27, 2010.  Defendants may renew their motions to dismiss no later than October 27, 2010, and they need only supplement their prior moving papers as to those matters materially affected by the RICO Case Statement.  VSC's opposition to Defendants' renewed motions must be filed no later than November 16, 2010.  Defendants' reply shall be due no later than November 23, 2010.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: August 27, 2010

          S/Garrett E. Brown, Jr.
          Garrett E. Brown, Jr., Chief Judge
          United States District Court

---

[4] The Court notes that because there has been extensive discovery in the State Court Action, VSC likely has had ample opportunity to gather information sufficient to satisfy the "reasonable inquiry" standard, and this Court anticipates that the RICO Case Statement will reflect the current status of the proceedings in the State Court Action.